UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
DEC 1 9 2016 BW
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

VICENTE GARCIA,
Petitioner,

V.

UNITED STATES OF AMERICA,
Respondent./

CRIM NO. 08-CR-746
Second in time §2255
Advisement Petition

MOTION TO VACATE CONVICTION UNDER 18 U.S.C. §2255

Petitioner, Vicente Garcia, Pro Se litigant, hereby files a motion to set aside the judgment in this case on Count(s) 1,2,3,9,10,11,12,13 & 14 pursuant to 28 U.S.C. §2255. As explained below. Mr. Garcia's conviction under 18 U.S.C. §924(c) and (2) must be vacated in light of the Supreme Court's recent decision in Johnson v. United States, 135 S.Ct. 2551(2015); Beckles v. United States, 135 S.Ct. 2928, 192 L.Ed. 2d 973(2016); Welch v. United States, No. 15-6418(2016).

## INTRODUCTION

On April 6, 2011, Mr. Garcia was convicted of one count of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c) Count 3. Specifically, the indictment alleged that the defendants Conspired to Commit Murder in the course of the violation of 18 U.S.C. §924(c), as set forth in Count(s) One, Two, Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen of the indictment. Count Three alleged in turn, use and carry of a firearm during and in relation to a "crime of violence" (in particular, conspiracy to commit Racketeering Activities categorically fails to qualify as a "crime of violence". Therefore, Mr. Garcia's §924(c) and §1962(c) convictions are invalid.

The relevant portion of §924(c) defining a "crime of violence" has two clauses. The first clause - §924(c)(3)(A) - is commonly referred to as the force clause. The other - §924(c)(3)(B) - is indistinguishable from the Armed Career Criminal Act (ACCA) residual clause (18 U.S.C. §924(e)(2)(B)(ii)) that the Supreme Court in Johnson struck down as void for vagueness. It follows that the §924(c) residual clause is like wise unconstitutionally vague. Hence, conspiracy to commit RICO Activities cannot qualify as a "crime of violence" under §924(c) residual clause. Likewise, conspiracy to commit RICO Activities categorically

1:16-cv-11480
Judge Charles R. Norgle, Sr
Magistrate Judge Maria Valdez
[1:08-cr-00746-2]

fails to qualify as a "crime of violence" under the remaining § 924(c) force clause. Therefore, the "crime of violence" element of § 924(c) and § 1962(c) cannot be satisfied here, and conviction cannot be constitutionally sustained under the statute.

As a result, Mr. Garcia's § 924(c) and § 1962(c) convictions 1) violate due process, 2) result in a fundamental miscarriage of justice, and 3) were entered in excess of this Court's jurisdiction.

Mr. Garcia is entitled to relief under 28 U.S.C. § 2255(f)(3) because Johnson established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable".

Mr. Garcia's petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it well within one year of the Supreme Court's decision in Johnson- ruling which established a "newly recognized" right that is "retroactively applicable to cases on collateral review." Therefore, Mr. Garcia respectfully requests that this Court grant his § 2255 motion, vacate his current sentence, and re-sentence him.

As grounds for this motion, Mr. Garcia states as follows:

## STATEMENT OF THE CASE

On September 30, 2009, Defendant Vicente Garcia was charged along with seventeen others in a 48-count superseding indictment with violations of Title 18, United States Code, Sections 1951, 1959(a)(3), 1962(d) and 924(c); and Title 21, United States Code, Sections 841(a)(1) and 846. R. 299. On February 28, 2011, Mr. Garcia along with Augustin Zambrano, Alfonso Chavez and Jose Guzman went to trial before a jury and United States District Judge Charles R. Norgle, Sr. R. 781. On April 6, 2011, the jury found Mr. Garcia and his co-defendants guilty on all counts of the superseding indictment. R. 842.

On February 8, 2013, Defendant Garcia's sentencing was held. R. 1299. The district court denied Defendant's post trial motions and motion for aquittal. S. Tr. 5. [Sentencing excerpts attached to the Brief as Appendix Item B]. The court adopted the findings of facts and conclusions of law presented in the Presentence Investigation Report. S.Tr. 10. Defendant objected that the Probation Department inappropriately applied RICO predicate acts on the basis that Defendant, as a leader of the Latin King organization in the RICO conspiracy, could foresee these acts and be responsible for them. S.Tr. 13. The district court stated that

he addressed these same issues with the other defendants and the court had no reason to change any ruling that it had consistently made. S.Tr. 16. The court for the same reasons overruled the objections of Defendant. S.Tr. 16. The Defendant also objected to the imposition of the ten year mandatory minimum for the 924(c) as violating the Defendant's Fifth and Sixth amendment rights. S.Tr. 16. The court overruled the Defendant's objections. Id.

The government asked for a sentence of life imprisonment but not less than 60 years. S.Tr. 28. Defendant argued that although the guideline level was 43, none of the sentences for which Defendant was convicted had a maximum sentence of life which would permit the court to give Defendant a life sentence. S.Tr. 36. The Defendant was sentenced to 240 months each for Counts 1,2,9,10 and 14 (the statutory maximum) and 60 months for counts 11 and 13, all to run concurrently with Count 12. S.Tr. 49. The Defendant also was sentenced to a 10 year mandatory minimum for Count 3 to run consecutively to other counts. S.Tr. 49.

The Defendant was sentenced to a total of forty years in the Bureau of Prisons. R. 1299. The final judgment was docketed on February 8, 2013. R. 1299. On February 20, 2013, a timely notice of appeal was filed. R. 1300.

See: Footnote 10 continued.

**Johnson v. United States**

On June 26, 2015, the Supreme Court issued its decision in Johnson, 135 S.Ct. 2551. In that case, the Court overruled Sykes v. United States, 131 S.Ct. 2267 (2011) and James v. United States, 550 U.S. 192 (2007), and invalidated the ACCA's residual clause as too vague to provide adequate notice under the Due Process Clause. In Johnson, 135 S.Ct. 2551, the Supreme Court held that imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process. Specifically, the Court concluded that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," and "[i]ncreasing a defendant's sentence under the clause denies due process of law." Id. at 2257. Finding the residual clause "vague in all its applications[,] the Court overruled its contrary decisions in Sykes and James. Id. at 2562-63. After Johnson, Mr. Garcia's § 924(c) and § 1962(c) convictions cannot be sustained for the reasons noted below.

**ARGUMENT**

In light of Johnson, Mr. Garcia's convictions caanot be sustained under 18 U.S.C. § 924(c) or § 1962(c) because conspiracy to commit RICO Activities fails to qualify as a "crime of violence".

Mr. Garcia's § 924(c) and § 1962(c) convictions for using and carrying a firearm in realtion to a "crime of violence" are void because the "crime of violence" element cannot be satisfied here. The predicate offense of conspiracy to commit Rico Activities does not qualify as a "crime of violence" as a matter of law.

Under § 924(c)(3), "crime of violence is defined as follows:

For purposes of this subsection, the term "crime of violence" means an offense that is a felony and-

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause-§ 924(c)(3)(A)- is the force clause. The other- § 924(c)(3)(B)- is the residual clause. As discussed in the next sections, conspiracy to commit Rico Activities categorically fails to qualify as a "crime of violence" under the residual clause because it is void for vagueness under Johnson. In Johnson, the Supreme Court struck down the Armed Career Criminal Act's (ACCA) residual clause (18 U.S.C. § 924(e)(2)(B)(ii) as unconstitutionally vague. 135 S. Ct. 2551 2557 (2015). Under Johnson, § 924(c)'s materially indisguishable residual clause (§ 924(c)(3)(B) must similarly be stricken as unconstitutional.

Likewise, conspiracy to commit Rico Activities categorically fails to qualify as a "crime of violence" under the remaining force clause (§ 924(c)(3)(A)) because it does not have as an element the use, attempted use, or threatened use of violent force. Therefore, a conviction cannot be constitutionally sustained under § 924(c) or § 1962(c) for Counts 1,2,3,9,10,11,12,13 & 14 of the indictment.

Section 924(c)'s residual clause is unconstitutionally vague.

Conspiracy to commit Rico Activities cannot qualify as a "crime of violence" under § 924(c)(3)'s residual clause because the clause is void for vagueness under Johnson. In Johnson, the Supreme Court decided that the ACCA's residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another") is unconstitutionally vague, but the decision equally applies to the parallel "crime of violence" definition in § 924(c)(3)'s

residual clause. Section 924(c)(3)(B) suffers from the same two flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence", therefore, violates due process.

Indeed, the Ninth Circuit in Dimaya v. Lynch, 803 F.3d 1110(9th Cir. 2015) and the Seventh Circuit in United States v. Vivas-Ceja, 808 F.3d 719 (7th Cir. 2015) recently struck down an identical residual clause- 18 U.S.C. § 16(b)- as unconstitutionally vague in light of Johnson. The rationale of Dimaya and Vivas-Ceja equally applies to the determination of whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c). Relying on the same reasoning of Dimaya and Vivas-Ceja, two district courts recently found that the § 924(c) residual clause was void for vagueness. See United States v. Lattanaphom, ___ F. Supp. 3d ___, 2016WL393545 (E.D. Cal. 2016); United States v. Edmundson, ___ F. Supp. 3d ___, 2015WL 9311983 (D. Md. Dec. 30, 2015). This Court should do the same.

**Johnson expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence".**

In Johnson, the Supreme Court "began its analysis of the vagueness question by noting that the [ACCA] residual clause mandates the use of a two-step framework [under the categorical approach], to determine whether a crime is a violent felony." Vivas-Ceja, 808 F.3d at 721 (citing Johnson, 135 S. Ct. at 2557, 2562). "In the first step, the court must determine 'the kind of conduct that the crime involves in the ordinary case' as opposed to the facts on the ground in the defendant's prior case." Id. (quoting Johnson, 135 S. Ct. at 2557). The second step is also dependent on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime presents a serious potential risk of physical injury." Id.

The Supreme Court held that these "two features of the residual clause conspire to make it unconstitutionally vague." Johnson, 135 S. Ct. at 2557. To begin with, the Court held that it is impossible for a sentencing court to even get past the first step because there is too much uncertainty about what constitutes the ordinary case of a crime. Id. The Court concluded that the "residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary'... involves." Id. at 2558. Specifically, the Court explained that a statistical analysis of reported cases, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case". Id. at 2557 (quoting United States v. Mayer, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski,

C.J., dissenting from denial of rehearing en banc))).

The Court then held that the second step of the residual clause is equally flawed because there is too much "uncertainty about how much risk it takes'[i.e., the quantum of risk] before a court can conclude that the 'ordinary case' of a crime is serious enough to be a violent felony." Vivas-Ceja, 808 F. 3d at 722 (citing Johnson, 135 S. Ct. at 2558). To be clear, the Court's reasoning on the second step did not turn on the type of risk, i.e. "serious potential risk of physical injury." Rather, like the first step, it also turned on the doomed "ordinary case" inquiry: "it is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." Johnson, 135 S.Ct. at 2558; see also Welch v. United States, __ U.S. __, 2016 WL 1551144, at *7 (2016) ("The residual clause failed not because it adopted a 'serious potential risk' standard but because applying that standard under the categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense").

With these words, the Court conveyed that the constitutionality of the ACCA residual clause would not have been in question if the statute had required the jury to determine risk based on the individual facts in the case. Id. The Court explained that it was not doubting the constitutionality of any statute which "require[s] gauging the riskiness of conduct in which an individual defendant engages on a particular occasion." Johnson at 2561 (emphasis added). However, because under the ACCA residual clause, the quantum of risk had to be assessed based on the ordinary case, the clause was constitutionally doomed. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary" case analysis is more than the "Due Process Clause tolerates." Id. at 2558.

Thus, Johnson not only invalidated the ACCA residual clause, but it invalidated the "ordianry case" analysis and statutory provisions that compel such analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

Johnson Means That § 924(c)(3)(B) Is
Unconstitutionally Vague.

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.[1] To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18

U.S.C. §924(c)(3)(B) are not identical[2]. But the differences have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in §924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the Johnson decision.[3] The court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk.[4]

The two-step process is the same under both the ACCA and §924(c). Both statutes require courts to picture the "ordinary case" embodied by a felony,[5] and then decide if it qualifies as a crime of violence by assessing the quantum of risk posed by the "ordinary case". The Fourth Circuit held exactly as such in United States v. Avila, 770 F.3d 1100,1107(4th Cir. 2014) in construing §16(b): [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct emcompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." James, 550 U.S. at 208, 127 S.Ct. 1586. As long as an offense is a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. §16(b).
Id.

Avila controls here because §16(b) and §924(c)(3)(B) are identical.[6] Even more, consistent with Avila, in United States v. Fuertes, 805 F.3d 485,498(4th Cir. 2015), the Fourth Circuit directly applied the "ordinary case" inquiry to the §924(c) residual clause. 805 F.3d at 500 n. 6. See also United States v. Naughton, 621 Fed. Appx. 170,178(4th Cir. Sept. 2, 2015)(applying the ordinary case inquiry to §924(c)(3)(B)). Thus, as Judge Grimm explained in Edmundson, the "§924(c) residual clause suffers from exactly the same double indeterminacy as the ACCA residual clause." Edmundson, 2015 WL 9311983, at *4. Moreover, the Seventh and ninth Circuits recognized the same in invalidating §16(b), the identical twin to §924(c)(3)(B), as void for vagueness under Johnson. See Vivas-Ceja, 808 F.3d at 723; Dimaya, 803 F.3d at 1117.

It is also noteworthy that in litigating Johnson, the Government, through the Solicitor General, agreed that the phrases at issue in Johnson and here pose the same problem. Upon recognizing that the definitions of a "crime of violence" in both §924 (c)(3)(B) and §16(b) are identical, the Solicitor General stated:

> "Although §16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioners central objection to the residual clause: Like the ACCA, §16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

Johnson v. United States, S.Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23)(March 30, 2015. The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This court should hold the Government to that concession.

Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in predicate offenses, and how risky that ordinary case is. Fuertes, 805 F.3d at 500 n.6; Avila,770 F.3d at 1107; Ayala, 601 F.3d at 267; Van Don Nguyen, 571 F.3d at 530; Sanchez-Garçia, 501 F.3d at 1213. Since these are the identical analytical steps that brought down the ACCA residual clause, §924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in Johnson. As a consequence, the residual clause cannot be used to support a conviction under §924(c).

CONSPIRACY TO COMMIT RICO ACTIVITIES CATEGORICALLY FAILS TO QUALIFY AS A "CRIME OF VIOLENCE" UNDER THE "FORCE" CLAUSE.

1. The categorical approach applies in determining whether an offense qualifies as a "crime of violence" under the "force" clause.

In determining whether an offense qualifies as a "crime of violence" under the "force" clause, sentencing courts must employ the categorical approach. See Descamps v. United States, 133 S.Ct. 2276,2283(2013); United States v. Royal, 731 F.3d 333,341 (4th Cir. 2013).[7] This approach requires that courts "look only to the statutory definitions- i.e., the elements- of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence". Descamps, 133 S.Ct. at 2283 (citation omitted); Royal, 731 F.3d at 341-42. In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute- "including the most innocent conduct" matches or is narrower than the "crime of violence" definition. United States v. Torres-Miguel, 701 F.3d 165,167(4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence", then the statute categorically fails to qualify as a "crime of violence".

As a result, post-Descamps, for an offense to qualify as a "crime of violence" under the "force" clause, the offense must have an element the use, attempted use, or threatened use of "physical force" against another person. 18 U.S.C. §924(c)(3)(A). And "physical force" means violent force- that is "strong physical force", which is

"capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133,140(2010)(emphasis in original).[8]

As further detailed below, under these terms, Mr. Garcia's offense of conspiracy to commit Rico Activities categorically fails to qualify as a §924(c) or §1962(c) "crime of violence" under the force clause.

2. Controling Seventh Circuit law dictates that Mr. Garcia's conspiracy offense categorically fails to qualify as a "crime of violence" under §924(c)'s force clause.

A federal conspiracy is merely "an agreement among two or more persons to achieve an unlawful object... the carrying out of the substantive crime." Sand and Siffert, Modern Federal Jury instructions 19-3S. Under these terms, it goes without saying that Mr. Garcia's conspiracy offense does not require the use, attempted use, or threatened use of physical force- let alone any physical force-required under the §924(c) force clause. The Fourth Circuit's decision in United States v. White, 571 F.3d 365,369(4th Cir. 2009) is directly on point. In that case, at issue was whether the defendant's conspiracy to commit a North Carolina offense of robbery with a dangerous weapon was a "crime of violence" under the ACCA. Just like a conspiracy to commit RICO Activities, North Carolina conspiracy requires an agreement to commit a substantive crime without the use of any force - let alone violent physical force. White, 571 F.3d at 368. Although the Fourth Circuit held that the conspiracy qualified as "crime of violence' under the now-defunct ACCA residual clause (18 U.S.C. §924(e)(2)(B)(iii), the court, without hesitation, also held that the conspiracy is not a "crime of violence" under the ACCA force clause, which for all relevant purposes, is identical to the §924(c) force clause. Id. at 369 (Applying a categorical analysis to the Conspiracy Offense, we first observe that it does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another.'")(citing 18 U.S.C. §924(e)(2)(B)(ii)).

In United States v. Gore, 636 F.3d 728(5th Cir. 2011), the Fifth Circuit, relying on White, held the same with respect to a Texas offense of conspiracy to commit an aggravated robbery: "A factfinder could convict a defendant of conspiracy to commit aggravated robbery by concluding that there was an agreement to (1) commit robbery and (2) engage in one or more of the acts enumerated in the aggravated robbery statute, without finding that physical force against the person of another was actually used or that there was an attempted or threatened use of such force. Accordingly, conspiracy to commit aggravated robbery does not come within the definition of 'violent felony' in [the ACCA force clause]". Id. at 731 (emphasis added).

Post-Johnson, the Fourth Circuit as well as the Seventh Circuit have reinforced that conspiracies do not have an element of violent force. See United States v. Melvin, 621 Fed. Appx. 226(4th Cir. 2015)(relying on White to find that conspiracy to commit North Carolina robbery with a dangerous weapon does not qualify as an ACCA "violent felony" under the force clause); United States v. Gonzalez-Ruiz, 794 F.3d 832(7th Cir. 2015)(finding that conspiracy to commit armed robbery fails to qualify as an ACCA "violent felony" post-Johnson). Likewise, Judge Grimm of the District of Maryland, relying on the Fourth Circuit's decisions in Melvin and White, recently found that conspiracy fails to constitute a "crime of violence' under the §924(c) force clause. See United States v. Edmundson, __F. Supp. 3d__, 2015 WL9311983(D. Md. 2015)(finding that conspiracy to commit Hobbs Act Robbery fails to qualify as a "crime of violence' under the force clause). **Continue footnote 10.**

To be clear, none of these decisions turned on the object of the conspiracy, whether that was robbery or armed robbery. In none of these decisions did the court find or even hint that the robbery or armed robbery offenses themselves - which were the objects of the conspiracies - did not have an element of violent physical force. Whether or not the robbery offenses independently had an element of violent physical force was beside the point. Rather, these decisions reflect that regardless of the object of the conspiracy, conspiracy itself fails to qualify as a "crime of violence" under the force clause because the act of conspiring is not the use, attempted use, or threatened use of violent physical force.

These decisions are consistent with the plain language of the force clause, which includes the inchoate offense of attempt, but not conspiracy. Because Congress included an inchoate offense in the force clause, it certainly knew how to write a statute that also included the inchoate offense of conspiracy. But chose not to do so. Therefore, it is plain that Mr. Garcia's conspiracy conviction categorically fails to qualify as a "crime of violence" under the force clause.

II. Mr. Garcia's claim is cognizable under §2255(a).

Under 28 U.S.C. §2255(a), a petitioner is entitled to relief when his original conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. 28 U.S.C. §2255(a). Mr. Garcia is entitled to relief on all of these grounds.

First, based on all the reasons noted above, Mr. Garcia's §924(c) and §1962(c) convictions violate due process because they were dependent upon an unconstitutionally vague residual clause.

Second, because post-Johnson conspiracy to commit Rico Activities categorically fails to satisfy the "crime of violence" element under §924(c), the indictment failed to state an offense under §924(c) or §1962(c), and Mr. Garcia has now been convicted of offenses that are no longer criminal. This means his convictions violate the United States laws and result in a miscarriage of justice. The Supreme Court has held that this is exactly the type of error that is cognizable under 28 U.S.C. §2255(a). See Davis v. United States,417 U.S. 333, 346-47(1974)(holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under §2255").

Third, Mr. Garcia's convictions have been entered in excess of this Court's jurisdiction because not only did the indictment fail to state a §924(c) or §1962(c) offense, but it affirmatively alleged conduct that is outside of the sweep of §924(c) and §1962(c). Specifically, Counts 1,2,3,9,10,11,12,13, and 14 of the indictment alleged the use of a firearm during and in relation to conspiracy to commit Rico Activities, but as discussed above, under the categorical approach, conspiracy to commit Rico Activities can never qualify as a §924(c) "crime of violence". In turn, a §924(c) or §1962(c) conviction can never be sustained based on the underlying offense of conspiracy to commit Rico Activities no matter what the facts are. Simply put, Counts 1,2,3,9,10,11,12,13,14, all together fails to state a §924(c) or §1962(c) offense,[9] respectively. Thus, Mr. Garcia's convictions are a legal nullity that were entered in excess of this Court's jurisdiction and must be vacated. See United States v. Brown, 752 F.3d 1344,1347(11th Cir. 2014)(a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute."); United States v. Barboa, 777 F.3d 1420,1423 n.3(10th Cir. 1985)("If Barboa pled guilty to something which was not a crime, he is not now precluded from raising this jurisdictional defect, which goes 'to the very power of the States to bring the defendant into court to answer the charge brought against him.")(quoting Blackledge v. Perry, 417 U.S. 21,30(1974)).[10]

Mr. Garcia's petition satisfies the requirements of 28 U.S.C. §2255(f)(3) because Johnson announced a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable.

Mr. Garcia files this motion pursuant to 28 U.S.C. §2255(f)(3) after receiving authorization from the district court. That section requires that, before this Court can consider a amended motion, the appropriate District Court must certify

as provided in 28 U.S.C. §2255(f)(3) that a motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." Pursuant to §2255(f)(3), the district court should authorize this motion upon concluding that Mr. Garcia has made a prima facie showing that he may be entitled to relief. But Mr. Garcia now demonstrates that beyond a prima facie showing, he, in fact, fully satisfies the requirements of §2255(f)(3) for all the reasons listed below.

1. Johnson announced a previously unavailable new rule of constitutional law.

First, the Supreme Court's decision in Johnson announced a new rule. A case announces a new rule if the result was not "dictated by precedent existing at the time the defendant's conviction became final." Chaidez v. United States, 133 S.Ct. 1103,1107(2013)(quoting Teague v. Lane, 489 U.S. 288,301(1989)). Here, the rule announced in Johnson is new because it expressly overruled James and Sykes, which had previously found that the residual clause was not void for vagueness. See Johnson, 135 S.Ct. at 2563("Our contrary holdings in James and Sykes are overruled"). Indeed, "[t]he explicit overruling of an earlier holding no doubt creates a new rule." Whorton v. Bockting, 549 U.S. 406,416(2007)(citation omitted). Therefore, as the Supreme Court recently held in Welch v. United States, __U.S.__, 2016 WL 1551144, at *7(2016), "Johnson announced a new rule".

Second, there is no question that Johnson announced a rule "of Constitutional law". Johnson expressly holds that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." Johnson, 135 S.Ct. at 2563; see also In re Watkins, 810 F.3d 375,380(6th Cir. 2015); Price v. United States, 795 F.3d 731, 732-33(7th Cir. 2015). It declared that the residual clause is unconstitutionally vague and that the Due Process Clause forbids any use of it in increasing a statutory minimum or maximum sentence. Johnson, 135 S.Ct. at 2563.

Finally, the result in Johnson was not previously available to Mr. Garcia. In both James, 550 U.S. at 210 n. 6, and Sykes, 131 S.Ct. 2267, the Court rejected suggestions by the dissenting Justices that the residual clause was unconstitutionally vague. Until Johnson was decided, any successive collateral attack on this basis was foreclosed.

2. Johnson is retroactive.

Under Teague v. Lane, 489 U.S. 288(1989), a Supreme Court decision applies retroactively to cases on collateral review if it announces a "new" rule that is "substantive". Schriro v. Summerlin, 542 U.S. 348,351(2004); Miller v. United States,

735 F.3d 141,145(4th Cir. 2013). Johnson satisfies both requirements. The rule announced in Johnson is "new" for reasons already stated, and it is "substantive" for the reasons discussed below.

As the Supreme Court recently clarified in Welch, "[a] rule is substantive rather than procedural if it alters the range of conduct or class of persons that the law punishes." 2016 WL 1551144, at *7 (quoting Schriro, 542 U.S. at 353). "Procedural rules, by contrast, 'regulate only the manner of determining a defendant's culpability.'" Welch, 2016 WL 1551144, at *7 (citation omitted).

Under these terms, the Supreme Court in Welch held that the rule announced in Johnson is substantive. Id. The Court explained that "[b]y striking down the residual clause as void for vagueness, Johnson changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" Id. (citation omitted). The Court elaborated that "[t]he residual clause is invalid under Johnson, so it can no longer mandate or authorize any sentence." Id. "Johnson establishes, in other words, that even the use of impeccable factfinding procedures could not make legitimate a sentence based on that clause." Id. (citation omitted).

"By the same logic, Johnson is not a procedural decision because it had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act." Welch, 2016 WL 1551144, at *8. Johnson, for example, did not "allocate decision making authority between judge and jury, or regulate the evidence that the court could consider in making its decision[.]" Id. (citation omitted). Rather, unlike those "judicial procedures by which the statute is applied." Johnson "affected the reach of the underlying statute." Id. "Johnson is thus a substantive decision and so has retroactive effect under Teague in cases on collateral review." Id.

Not only did Johnson alter the class of persons that the law punishes under the ACCA, but it also altered the range of conduct that can be punished under 18 U.S.C. §924(c). Section 924(c) criminalizes carrying a firearm during and in relation to a "crime of violence." Johnson establishes that certain offenses cannot be considered "crime of violence" consistent with due process, and thus, alters the conduct §924(c) makes criminal. When a defendant has been convicted under §924(c) for using a firearm in connection with some crime that, under Johnson, cannot constitutionally be considered a "crime of violence", he has been convicted of an act that the law does not make criminal. This means Johnson is plainly substantive. See Bousley v. U.S., 523 U.S. 614,620

(1998)(decision narrowing the elements of 18 U.S.C. §924(c) is substantive, and thus retroactive, because it "hold[s] that a substantive federal criminal statute does not reach certain conduct, [and] plac[es] conduct beyond the power of the criminal law-making authority to proscribe[.]")(internal quotations and citations omitted). Indeed, in Freeman v. United States, No. 15-3687(2d Cir. Jan.26, 2016), upon the Government's concession, the Second Circuit recently granted a motion to authorize a successive petition based on a Johnson challenge to a §924(c) challenge. The Seventh Circuit did the same in Ruiz v. United States, No. 16-1193(7th Cir. Feb.19, 2016).

Therefore, Johnson is substantive, and in turn, retroactive.

3. The Supreme Court has "made" Johnson retroactive to cases on collateral review.

It goes without saying that the Supreme Court in Welch has "made Johnson retroactive to cases on collateral review.

This motion is timely under 28 U.S.C. §2255(f)(3).

This motion is timely under 28 U.S.C. §2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

The Supreme Court decided Johnson on June 26, 2015, and Mr. Garcia filed his claim within a year of that date. As discussed above, the Supreme Court recognized a new right in Johnson, and announced a substantive rule that is therefore retroactive to cases on collateral review.

ILLEGAL SENTENCE

Absent the RICO Conspiracy and §924(c) offenses, maximum statutory penalty would be 3 years under §1959(a)(6) as opposed to the 40 years minimum penalty resulting from the consecutive §924(c) conviction for Count Three §924(c). Movant's sentence is approximately 37 years beyond the statutory maximum penalty authorized by law. Therefore, there is a fundamental miscarriage of justice to one Actually Innocent of RICO Conspiracy §1962(d) and §924(c) convictions in Count Three. §2255(e) Savings Clause §2241 as §2255 is inadequate and ineffective to test the legality of his convictions. United States v. Smith, 2016 U.S. Dist. LEXIS 65543; United States v. Daires-Reyes, 2016 U.S. Dist. LEXIS 74192; United States v. Bundy, 2016 U.S. Dist. LEXIS 75812. In Bryant v. Coleman, 738 F.3d 1253(11th Cir. 2013), The court stated, "In this respect, a sentence exceeding the authorized statutory maximum in §924(a)

is more akin to an actual-innocence claim, which every circuit to have considered the savings clause, but the Tenth, acknowledges would qualify under the savings clause. The prisoner who was convicted and sentenced under the §924(e) statute that the Supreme Court subsequently decides never punished his conduct is being held without authorization by any congressional statute. Similarly, when a prisoner convicted of a 922(g) crime serves more than the applicable 10 year maximum in §924(a) due to an erroneous §924(e) sentence, he too is being detained without authorization by any statute."

Therefore, because movant's 40 year sentence under §1962(d) and §924(c)(3)(B) is illegal and under unconstitutionally void for vagueness statutory provisions, and exceeds the statutory maximum penalty of 3 years under §1959(a)(6). Wherefore, he must be resentenced and immediately released from custody to correct a fundamental miscarriage of justice. Southern Union Co. v. United States, 183 L.Ed. 2d 318(2012); United States v. LaBonte, L.Ed. 2d 1001(1997); Schlup v. Delo, 130 L.Ed. 2d 808(1995). Movant is approximately 4 years, 9 months and 20 days beyond the lawfully required sentence authorized by law. Hence, he remains in custody in violation of the Constitution and laws of the United States.United States v. Thyberg, 2016 U.S. Dist. 103639 (2016).

## CONCLUSION

For the reasons set forth above, Mr. Garcia respectfully asks this Court to vacate his §924(c) and §1962(d) RICO Conspiracy and all related counts. Or resentence him and grant his immediate release as the interest of justice would best be served.

Date: October 4, 2016

Respectfully submitted,

Vicente Garcia

VICENTE GARCIA
# 43507-279

12/14/16

FOOTNOTES:

1) Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here. Although the comparison tends to specifically address 18 U.S.C. §16(b), that statute is identical to §924(c)(3)(B). See, e.g., Chambers v. United States, 555 U.S. at 133, n.2(2009)(citing circuit splits on §16(b) in the context of a residual clause case because §16(b) "closely resembles ACCA's residual clause")(Alito,J., concurring). See also United States v. Ayala, 601 F.3d 256, 267(4th Cir. 2010)(relying on an ACCA case to interpret the definition of a crime of

violence under §924(c)(3)(B); United States v. Aragon, 983 F.2d 1306,1314(4th Cir. 1993)(same); United States v. Keelan,786 F.3d 865,871 n.7(11th Cir. 2015)(decribing the ACCA otherwise clause and §16(b) as "analogous"); Roberts v. Holder, 745 F.3d 928, 930-31(8th Cir. 2014)(using both ACCA cases and §16(b) cases to define the same "ordinary case" analysis); United States v. Sanchez-Espinal, 762 F.3d 425,432 (5th Cir. 2014)(despite the fact that the ACCA talks of risk of injury and §16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under §16(b)").

2) In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B)(ii). Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

3) See Vivas-Ceja, 808 F.3d at 722("§16(b) substitutes 'substantial risk' for the residual clause's 'serious potential risk.' Any difference between the two phrases is superficial. Just like the case of a crime qualifies as 'substantial.'"); Jimenez-Gonzales v. Mukasey, 548 F.3d 557,562(7th Cir. 2008)(noting that, "[d]ispite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and §16(b) "perfectly mirrored" each other). See also United States v. Gomez-Leon, 545 F.3d 777(9th Cir. 2008; United States v. Coronado-Cervantes, 154 F.3d 1242,1244 (10th Cir. 1998); United States v. Kirk, 111 F.3d 390,394(5th Cir. 1997); United States v. Bauer, 990 F.2d 373,374(8th Cir. 1993)(describing the differences between the statutes as "immaterial" and holding that U.S.S.G. §4B1.2, which uses ACCA language, "is controlled by" a decision that interprets §16(b)).

4) Of course, many federal and state criminal laws included "risk" standards that employ adjectives similar to those in the ACCA and §924(c), such as "substantial", "grave", and "unreasonable". And the Supreme Court in Johnson said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, and §924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime," an abstract inquiry" that "offers significantly less predictability." Johnson, 135 S.Ct. at 2558.

5) Both the ACCA and §924(c)(3)(B) require courts to discern what the ordinary case of a crime is by using the categorical approach. See, e.g., United States v. Fuertes, 805 F.3d 485,498(4th Cir. 2015); United States v. Butler, 496 Fed. Appx. 158,161 n.4(3d Cir. 2012); Evans v. Zych, 644 F.3d 447,453(6th Cir. 2011); United States v. Serafin, 562 F.3d 1104,1108(10th Cir. 2009); United States v. Green, 521 F.3d 929,932(8th Cir. 2008); United States v. Acosta, 470 F.3d 132,134(2d Cir. 2006); United States v. Amparo, 68 F.3d 1222,1225(9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case", regardless of whether the ACCA, §924(c)(3)(B), or §16(b) is at issue.

6) Other courts likewise require the ordinary case analysis when the statutory language of §16(b)(and thus §924(c)(3)(B)) is at issue. See,e.g., Keelan, 786 F.3d at 871(adopting "ordinary case" analysis for §16(b)); United States v. Ramos-Medina, 706 F.3d 932,938(9th Cir. 2012)(citing James as the source of the "ordinary case" analysis required by §16(b); Van Don Nguyen v. Holder, 571 F.3d 524,530(6th Cir. 2009) (considering §16(b) and concluding that "[t]he proper inquiry is one that comtemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); United States v. Sanchez-Garcia, 501 F.3d 1208,1213 (10th Cir. 2007)(same).

7) Although Descamps involved the categorical approach as applied to the ACCA, this same categorical approach applies in determining whether an offense qualifies as a "crime of violence" under 18 U.S.C. §924(c). See United States v. Fuertes, 805 F.3d 485,498(4th Cir. 2015).

8) Courts of Appeals have consistently held that 18 U.S.C. §16(b)(which is almost the same as §924(c)(3)(A)) contemplates "destructive", "violent force" - not de minimis force. United States v. Landeros-Gonzales, 262 F.3d 424,426(5th Cir. 2001); see also Flores-Lopez v. Holder, 685 F.3d 857,864(9th Cir. 20 )(requiring "use of violent, physical force"); United States v. Serafin, 562 F.3d1105,1109(10th Cir. 2009); Jobson v. Ashcroft, 326 F.3d 367,373(2d Cir. 2003); Bazan-Reyes v. INS, 256 F.3d 600,611 (7th Cir. 2001)("[T]erm 'physical force' in 18 U.S.C. §16(b) refers to actual violent force.") Indeed, the Supreme Court in Johnson cited lower court opinions defining "physical force" under §16(b) when defining "physical force" in the Armed Career Criminal Act, 18 U.S.C. §924(e)(ACCA). 559 U.S. at 140(citing Flores, 350 F.3d at 672).

FOOTNOTE:

9) Here, in Depodestas' closing argument about GARCIA's involvement in the conspiracy to commit Racketeering Activities, he admits that the only act or crime attributable to GARCIA was his agreement with other co-defendants. He had no involvement in any of the overt acts. Depodesta himself admits GARCIA was innocent of any overt acts. And that the government did not prove or had to prove any overt acts involving GARCIA. These admission by the government itself supports the fact that GARCIA did not commit a crime of violence by or through his alleged "agreement". Trans. Pg: 2800: ¶4-22, Pg. 2822: ¶ 7-21 and Pg. 2823: ¶ 18-25 Depodesta's closing argument, attached Exhibit "A".

In United States v. Merritte, 2016 U.S. Dist. LEXIS 65543 (D.NV. 2016). The district court stated, "Proof of an overt act is not required for a conviction of Hobbs Act conspiracy.54 So, a defendant could be convicted of Hobbs Act conspiracy simply for agreeing to commit a Hobbs Act robbery. Agreeing to commit a robbery does not necessarily involve the use attempted use, or threatened use of physical force."

Eventhough the jury was erroneously instructed that GARCIA did not have to personally commit the racketeering acts, the instructions itself infers that his only involvement was an agreement in the conspiracy. And that itself is not a crime of violence. Therefore, the jury was not instructed the necessity of finding GARCIA personally committed a racketeering activity involving a crime of violence. See Jury Instruction Pg. 3044: ¶ 9-14. McFadden v. United States, 135 S.Ct. 2298, 192 L.Ed. 2d 260(2015). Therefore, absent properly instructed jury, the conviction must be set aside or vacated.

10) On January 19, 2016, movant filed his §2255 motion to vacate, set aside or correct sentence.

On March 7, 2016, the district court ordered government to respond by April 5, 2016.

On June 16, 2016, the government filed its response to §2255 motion.

EXHIBIT "A"

Trans. Pg. 2800: ¶ 4-22, Pg. 2822: ¶ 7-21 and Pg. 2823: ¶ 18-25 Depodesta's closing argument.

Jury Instruction Pg. 3044: ¶ 9-14.

reasonable doubt, through the recordings, through the testimony of the cooperators, through the tattoos in which Defendant Garcia identifies himself as a member of the Latin Kings, through the statements of his co-conspirators, and through his actions, that he was indeed a member of the Latin Kings.

That brings us to the second prong.

Did Defendant Garcia agree that he or other Latin King members would commit at least two acts of racketeering?

What did he agree to?

We know that he agreed to drug distribution. Not only did he agree to it, it was his brain child. It was his initiative that he was getting off the ground.

Six different distributions. That's six different acts of racketeering right there.

He enforced the Little Village rules. He ordered assaults with dangerous weapons, the Spanish Harlems getting piped, and the smashing of Loks's hand.

Again, an act we don't have to prove to you he participated. He did, and we proved that to you. But we didn't have to. Only that he agreed to the assault with a dangerous weapon.

Extortion and shootings.

Here, going back to the conversation from September 24th of 2007, it is very clear that Vicente Garcia, DK, the Supreme Regional Inca, specifically agrees that an assault with a

dangerous weapon is going to occur. Not only does he agree to it, he is the one who is specifically ordering it. In his words he says, well, he is gonna get piped for that.

Two guys are getting piped over there. Where? Spanish Harlems.

He doesn't even care -- he says I don't care who it is. Two people are gonna pay. Two people are gonna pay that maybe weren't even involved, getting piped. You know, and that's a problem that they need to settle within their branch.

He goes on to say, that's why they are getting piped, because they have violated the rules of the Nation.

Vicente Garcia goes on to say I'm not tolerating this stuff, bro'. You hit a brother with something, you gonna get hit with something. In this instance, a pipe.

Regardless of who it is, two of his guys are getting piped up. And they are getting piped up because the way you -- they left your boys.

Vicente Garcia has agreed to, he has specifically ordered an assault with a dangerous weapon. A racketeering act.

I'm going to come back and talk about some of these other racketeering acts that not only Vicente Garcia agreed to, but participated in, a little bit later. Right now I'd like to talk about the storage locker, the storage locker in which multiple guns, nine different guns, ammunition, and other items were recovered.

involved with the enterprise in a way that is related to its affairs or common purpose, although the person need not have a stake in the goals of the enterprise and may even act in a way that subverts its goals.

A person may be associated with an enterprise without being so throughout its existence.

In order to find a pattern of racketeering activity for purposes of Count 1, you must find beyond a reasonable doubt that a particular defendant knowingly agreed that one or more members of the conspiracy would commit at least two separate acts of racketeering, as described in paragraph 6 of Count 1.

For purposes of Count 1, the government does not have to prove that the racketeering acts were actually committed, or that a defendant agreed to personally commit the racketeering acts.

Nor is it necessary for the government to prove that a defendant agreed to the commission of particular acts at particular times and places.

You must also find that the agreed agreement -- excuse me.

You must also find that the agreed-to acts of racketeering were in some way related to each other, and that there was continuity between them. Acts are related to each other if they are not isolated events; that is, if they have similar purposes or results or participants or victims or are committed a similar way or have other similar distinguishing

job description.

Was he a member of the Latin Kings? You know that he was. We have proven that to you beyond a reasonable doubt.

The next question, did he agree that he or other Latin King members would commit at least two acts of racketeering?

What did he agree to? We know that he agreed and we know that he agreed because of his actions. On three different occasions he showed up for the drug distributions that the Incas were required to participate in. He showed up -- or his section did -- for mandatory bust-outs. He carried out the Little Village laws and his section engaged in a shooting.

As Judge Norgle is going to instruct you, what we need to prove is that the defendant, each defendant agreed that some member of the Latin Kings would carry out -- would perform -- would agree to do an act of racketeering.

What we don't have to prove is that the defendant personally participated in the commission of a racketeering act. It is enough that he agreed that some other member of the Latin Kings would participate in the act.

We also don't have to prove that the racketeering acts actually happened.

Now, in many instances here we have proved that the defendant did participate in the racketeering acts. Defendant Chavez did show up personally and engage in the distribution of cocaine.

**Editorial Information: Prior History**

On Motion for an Order Authorizing the District Court to Entertain a Second or Successive Motion for Collateral Review.

**Counsel** Jesus Ruiz, Petitioner, Pro se, Oxford, WI.
For United States of America, Respondent: Debra Riggs Bonamici, Attorney, Madeleine S. Murphy, Attorney, Office of The United States Attorney, Chicago, IL.

**Judges:** Before DIANE P. WOOD, Chief Judge, RICHARD A. POSNER, Circuit Judge, DANIEL A. MANION, Circuit Judge.

## Opinion

### ORDER

Jesus Ruiz has filed an application pursuant to 28 U.S.C. § 2244(b)(3), seeking authorization to file a successive motion to vacate under § 2255. Ruiz was convicted of three counts of using a firearm in connection with a crime of violence, 18 U.S.C. § 924(c). Ruiz wants to challenge those convictions under *Johnson* ***v. United States***, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), which held that the residual clause of the Armed Career Criminal Act is unconstitutionally vague. Because *Johnson* announced a new substantive rule of constitutional law, it has retroactive application. *Price* ***v. United States***, 795 F.3d 731 (7th Cir. 2015).

The government concedes Ruiz's ability to make a prima facie showing that his convictions were based on the definition of a crime of violence in 18 U.S.C. § 924(c)(3)(B), which is similar to the residual clause of the Armed Career Criminal Act. The government argues, though, that § 924(c)(3)(B) differs enough from the ACCA's residual clause that it was not invalidated by *Johnson*. But that subsection is identical to 18 U.S.C. § 16(b), which we held is unconstitutionally vague under *Johnson*. ***United States v. Vivas-Ceja***, 808 F.3d 719 (7th Cir. 2015).

Accordingly, we **GRANT** Ruiz's application and **AUTHORIZE** the district court to consider his claim.



© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

08552025

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## ORDER

November 28, 2016

*By the Court:*

| | |
|---|---|
| No. 16-4012 | VICENTE GARCIA,<br>Petitioner<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent |

Pursuant to Circuit Rule 2, Circuit Rule 22.2(c) is superseded to the following extent: The Respondent may file a response to the application within 7 days from today. In its response the government may address whether the applicant's sentencing enhancements are compatible with *Johnson v. United States*, 135 S.Ct. 2551 (2015). The applicant may file a reply within 4 days of the filing of the government's response. No further filings allowed. Absolutely no extensions except under extraordinary circumstances.

form name: c7_Order_BTC(form ID: 178)

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 28, 2016
Decided December 5, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-4012

VICENTE GARCIA,
*Applicant,*

*v.*

UNITED STATES OF AMERICA,
*Respondent.*

On Motion for an Order Authorizing the District Court to Entertain a Second or Successive Motion for Collateral Review.

## ORDER

Vicente Garcia has filed an application pursuant to 28 U.S.C. § 2244(b)(3), seeking authorization to file a successive motion to vacate under § 2255 that would argue a claim under *Johnson v. United States*, 135 S. Ct. 2551 (2015). But Garcia's first § 2255 motion, which argues a *Johnson* claim, is pending in the district court. No. 1:16-cv-859, R.28 (N.D. Ill. Nov. 28, 2016) (Order granting Garcia's motion for an extension of time to file a reply brief; reply due February 28, 2017). Garcia does not require this court's authorization to proceed on his proposed claim. Accordingly, we **DISMISS** the application without prejudice.

## CERTIFICATE OF SERVICE

I hereby certify and verify that a True and Correct copy of the foregoing was mailed out on this 16th Day of August, 2016 to the following Parties:

Matthew J. Hernandez (AUSA)
United States Attorney's Office
219 S. Dearborn St. Fifth Floor
Chicago, Illinois 60604

And

Prisoner Correspondence
United States District Court Clerk
219 S. Dearborn St.
Chicago, Illinois 60604

/s/ Vicente Garcia

Vicente Garcia # 43509-279
USP BIG SANDY
P.O. BOX 2068
INEZ, KY 41224 12/14/16




12/19/2016-16

1:16-cv-11480
Judge Charles R. Norgle, Sr
Magistrate Judge Maria Valdez
[1:08-cr-00746-2]

⇔11732-018⇔
Us Courthouse
US Dist. Ctr. E. Dist. Il
219 S Dearborn ST
Chicago, IL 60604
United States

7015 0640 0006 7951 4160